Andrew Dean
Gary Y. Leung
Stephen Kam
Brent Wilner
Payam Danialypour
Manuel Vazquez
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
(323) 965-3998
Email: KamS@SEC.GOV

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                     Plaintiff,<br><br>         vs.<br><br>DARRYL MATTHEW COHEN,<br><br><br><br>                     Defendant. | Case No. 1:23-cv-2453 |

## **COMPLAINT**

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Darryl Matthew Cohen ("Cohen") alleges:

1

**SUMMARY**

1.     Defendant Cohen was an investment adviser representative at an investment adviser firm headquartered in New York ("Investment Adviser Firm").  As an investment adviser, Cohen owed his advisory clients a fiduciary duty to serve their best interest and not subordinate his advisory clients' interests in favor of his own.  This civil enforcement action concerns Cohen's breach of his fiduciary duties when defrauding three of his clients, who are current and former NBA players.

2.     Between October 2017 and April 2020, Cohen misappropriated at least $1 million from those advisory clients by transferring their funds without their understanding or authorization to investments and expenditures from which he personally benefited.

3.     Cohen's misappropriation included funneling the clients' funds into his son's amateur basketball program and then using those funds to build a gym at his house, stealing one client's money to pay off another aggrieved client, and selling life insurance settlements to his clients from which he received kickbacks and funded home improvements.

4.     Investment Adviser Firm terminated Cohen in March 2021 after discovering his misconduct, and Cohen was also subsequently disciplined by the Financial Industry Regulatory Authority ("FINRA") after failing to cooperate with its inquiry.

5.     By engaging in the conduct alleged in this Complaint, Defendant Cohen violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and (2)].

6.     With this complaint, the SEC seeks permanent injunctions prohibiting future violations of the federal securities laws and an order requiring Cohen to disgorge his ill-gotten gains with prejudgment interest thereon pursuant to Sections 21(d)(3), 21(d)(5) and 21(d)(7) of

the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(3), (d)(5) and (d)(7)] and imposing civil penalties under Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to Sections 209(d), 209(e)(1) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 90b-14].

8. Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

9. Venue is proper in this district pursuant to Section 214(a) of the Advisers Act [15 U.S.C. § 90b-14], because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.

## THE DEFENDANT

10. Cohen, age 49, has residences in Chatsworth, California and Las Vegas, Nevada. From June 2015 through March 2021, Cohen was associated with Investment Adviser Firm as an investment adviser representative. In March 2021, Investment Adviser Firm fired him following client complaints related to the conduct alleged in this complaint. He holds Series 7, 63, and 65 licenses. In December 2021, FINRA barred Cohen from associating with any FINRA member firm in any capacity for his failure to respond fully and completely to cooperate with their investigation.

## FACTS

**A.     Cohen's Association with a Registered Investment Adviser**

11.    From June 2015 to March 2021, Cohen was employed at Investment Adviser Firm as an investment adviser representative and registered representative. Client A, Client B, and Client C were among his advisory clients (the "Defrauded Clients").

12.    Cohen represented to each of the Defrauded Clients that he offered a "one-stop shop," meaning that he could handle all of their financial service needs.

13.    Cohen provided the Defrauded Clients with large volumes of documentation; the Defrauded Clients signed many of these documents without thoroughly reviewing or understanding them. The Defrauded Clients were not finance professionals, and so they trusted Cohen and relied on his representations to them that there was safety working with a professional, such as himself, who was associated with a large, reputable firm like Investment Adviser Firm. Each of the Defrauded Clients relied on the purported safety of Cohen's association with Investment Adviser Firm to leave different financial professionals to work with him.

14.    The Defrauded Clients all had multiple brokerage accounts at Investment Adviser Firm, including some accounts that were advisory, meaning investment advisory services were included as part of the accounts to assist the clients in formulating and implementing investment purchases and strategies, and other accounts that were brokerage. Cohen provided discretionary advisory services for the advisory accounts and received a portion of the asset-based management fee.

15.    The Defrauded Clients' accounts were interconnected. Cohen frequently transferred funds between the different types of accounts. In addition, Client A's advisory

accounts were pledged as collateral for his liquidity access line.

16. The Defrauded Clients executed advisory services agreements with Investment Adviser Firm. Cohen was the designated investment adviser representative for the Defrauded Clients' investment accounts, was listed as such on the Defrauded Clients' Investment Adviser Firm account statements, and the clients understood that Cohen managed their accounts as their adviser. As the adviser of the Defrauded Clients' advisory accounts, Cohen had full access to and discretionary authority with respect to the accounts. For advisory services, Investment Adviser Firm was paid between 1% and 2.5% of the assets that he managed, and Cohen received a portion of these fees. Cohen was also the registered representative on the brokerage accounts and had full access with respect to those accounts.

17. Cohen breached the fiduciary duties that he owed to the Defrauded Clients by misappropriating at least $1 million from their accounts at Investment Adviser Firm.

B. **Misappropriation for Beast Basketball**

18. Beast Basketball, Inc. ("Beast Basketball") a California nonprofit public benefit corporation headquartered in Lakewood, California, was founded by Cohen's associate. Cohen's son was one of the players on the team, as was the son of Cohen's associate who founded Beast Basketball, Inc.

19. Cohen asked Client A whether he was interested in donating to an amateur basketball training program. Client A refused, given that he already funded his own separate amateur basketball team, which was based in Orlando, Florida.

20. Cohen represented to Client B that Beast Basketball was an amateur basketball training program to train youth talent for potential futures in collegiate and professional basketball. Client B refused Cohen's request to make any contributions to Beast Basketball in part because

he already funded his own separate youth basketball program.

21. Based on these interactions, Cohen was aware that neither Client A nor Client B wanted to contribute to Beast Basketball.

22. However, between October 2017 and September 2019, Cohen misappropriated at least $500,000 through at least 16 transfers from Client A's and Client B's brokerage accounts at Investment Adviser Firm to an account in the name of Beast Basketball. Cohen then used most of these funds to pay for the construction of a gym at his Chatsworth residence.

23. Of that amount and over that time period, Cohen withdrew approximately $480,000 from Client A's Investment Adviser Firm brokerage account to transfer to Beast Basketball. Cohen also withdrew approximately $20,000 from Client B's Investment Adviser Firm brokerage account to transfer to Beast Basketball in 2018.

24. Neither Client A nor Client B knowingly authorized any of these transfers to Beast Basketball. Moreover, the amounts that Cohen misappropriated from Client A's accounts for Beast Basketball far exceeded what Client A was contributing to his own established program.

25. The approximately $500,000 that Cohen misappropriated from these two clients accounted for nearly all of the $523,000 deposited into the Beast Basketball account. Nearly $200,000 of the money deposited into Beast Basketball's account was paid to a construction firm for work on building gym facilities at Cohen's Chatsworth residence.

26. In addition, Cohen received nearly $4,000 directly from Beast Basketball's account in the form of personal checks.

### C. Misappropriation to Repay Former Cohen Client

27. A former professional baseball player was Cohen's client at Investment Adviser Firm from 2015 until December 2018 ("Former Client").

28. In May 2020, Former Client filed a claim against Investment Adviser Firm with FINRA, after learning that Cohen improperly loaned funds out of his Investment Adviser Firm brokerage account to third parties without his consent. In the claim, Former Client stated that when he questioned Cohen about the status of the loans, money started reappearing in Former Client's Investment Adviser Firm account.

29. That money was misappropriated from Client A. Cohen misappropriated approximately $235,000 from Client A's brokerage accounts at Investment Adviser Firm, one of which was a liquidity access line for which Client A's advisory accounts were pledged as collateral, to fund the money that was ultimately deposited into Former Client's Investment Adviser Firm account. Specifically, on September 15, 2018, Cohen transferred approximately $235,000 from Client A's brokerage account at Investment Adviser Firm into accounts controlled by Cohen's associates. Less than two weeks later, this money was then transferred into Former Client's account, without Client A's knowledge or consent.

30. In addition, Cohen misappropriated funds that Client A had invested in Gold Sports Agency, an agency operated by Cohen's associates. On November 15, 2019, Cohen transferred approximately $265,000 from Client A's brokerage accounts at Investment Adviser Firm to Gold Sports Agency. Then, between November 27, 2019 and April 23, 2020, at least $76,000 of this money was deposited into Former Client's Investment Adviser Firm account, without Client A's knowledge or consent.

31. Client A did not know who Former Client was and did not approve the transfer of his funds to Former Client.

    D.    **Misappropriation Regarding Life Settlement Investments**

32. In a life settlement investment, an insured individual sells his or her life insurance policy at a discount from its face value for cash from a life settlement investor, in exchange for relinquishing the right to leave the policy's death benefit to their own beneficiary. The life settlement investor pays the insured a lump sum cash payout and agrees to pay all future premiums left on the life insurance policy. The life settlement investor then becomes the sole beneficiary and generally collects the full amount of the death benefit when the policy matures at the insured's death.

33. Between November 2017 and October 2020, Cohen promoted to each of the Defrauded Clients an opportunity to invest in life settlement investments.

34. Cohen represented to the Defrauded Clients that the life settlement investments had potential for significant returns with minimal risk.

35. Cohen told the Defrauded Clients that the policies were certain to generate sizable returns because the insureds were likely to pass away shortly given certain biographical information he provided about the insureds.

36. For example, Cohen told Client A that Client A would take over the premium payments for a policy owner who was a defendant in a much-publicized criminal matter and claimed the insured would likely either commit suicide before going to jail or die from his smoking habits.

37. Cohen also encouraged the Defrauded Clients to purchase the life settlement investments by claiming the investments would alleviate the financial burden on the

policyholders' families.

38.     Cohen facilitated the life settlement investment opportunities through an associate who executed contracts with Client A, Client B, and Client C to pay the premiums for the insurance policies, and the three Defrauded Clients were told that the life settlement interests were to be transferred to them.

39.     The Defrauded Clients believed Cohen offered them this investment opportunity through his association with Investment Adviser Firm and that Cohen would be paid through his typical share of the advisory fee from the assets under management.

40.     Unbeknownst to the clients, however, Cohen misappropriated at least $246,000 of the funds that the Defrauded Clients had invested in the life settlements, receiving substantial kickbacks for his role in directing his clients to the investments.

41.     These kickbacks to Cohen were received from a financial account, controlled by Cohen's associate, containing the funds his Defrauded Clients had invested to make premium payments on the life insurance policies.  The funds that were kicked back to Cohen were separate from Cohen's typical share of the advisory fee from the assets under management and were used to pay his personal expenditures including, (1) $153,462 to a home improvement company that did work on Cohen's house, (2) $25,000 to a pool construction company that built a pool at Cohen's house, and (3) $67,500 to Cohen's American Express account.

     E.      **Cohen's Misconduct Discovered**

42.     Cohen's scheme began to unravel around 2020 when Client A attempted to join a golf club and was required to disclose how much he had given in charitable contributions.  Client A requested that one of Cohen's associates calculate his charitable contributions.  Through this, Client A learned that his accounts at Investment Adviser Firm reflected substantial donations to

Beast Basketball, which he recognized as transactions that he had never authorized.

43.     Following Client A becoming aware of these unauthorized transactions, Investment Adviser Firm also became aware of Cohen's misconduct.  A subsequent investigation revealed Cohen's misappropriation scheme.

44.     After learning of Cohen's scheme, FINRA commenced an investigation in June 2020 focusing on conversion and misuse of customer funds, among other conduct.  After Cohen failed to cooperate with its inquiry, FINRA's Department of Enforcement served Cohen with a Notice of Suspension in June 2021, and a FINRA Hearing Panel ultimately barred Cohen from associating with any member firm in any capacity.

F.      **Cohen Owed His Clients Fiduciary Duties**

45.     Investment Adviser Firm was a registered investment adviser with the SEC during all relevant times.

46.     During the relevant period, Cohen was an investment adviser representative and an investment adviser under Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).  He was engaged in the business of providing investment advice as to the value of securities and as to the advisability of investing in, purchasing, and selling securities to Investment Adviser Firm clients, including the Defrauded Clients. Specifically, Cohen managed Investment Adviser Firm clients' assets, including the Defrauded Clients, on a discretionary basis and made investment decisions on their behalf in exchange for compensation, namely, a portion of the management fees collected by Investment Adviser Firm.

47.     The Advisers Act imposes a fiduciary duty on investment advisers, which includes both a duty of care and a duty of loyalty.  The duty of loyalty includes an affirmative duty of utmost good faith, to provide full and fair disclosure of all material facts and to employ

reasonable care to avoid misleading advisory clients. That duty to disclose all material facts included a duty to tell clients about any actual or potential conflicts of interest that might incline Cohen to give investment advice that was not disinterested. The duty of care includes a duty to provide investment advice in the best interest of clients based on their objectives.

48. In Investment Adviser Firm's October 2016 Investment Advisory Policies and Procedures ("Investment Adviser Firm's Policies and Procedures"), the firm explained that the anti-fraud provisions of the Investment Advisers Act of 1940 and the securities laws imposed a duty on investment advisory representatives to act as fiduciaries in dealings with their clients, meaning the adviser must hold the client's interests above his own in all matters.

49. Investment Adviser Firm's Policies and Procedures further emphasized that investment advisers should avoid conflicts of interest, including any activity that acts as a fraud on clients. In addition, these policies and procedures required investment advisers to account for all fees and expenses charged to clients' accounts.

50. Investment Adviser Firm's Policies and Procedures in effect during the relevant period applied to Cohen as one of its investment adviser representatives.

51. Cohen agreed in writing, on or about June 5, 2015, that he would comply with the policies and procedures of Investment Adviser Firm, FINRA, and any other regulatory agency, which was an ongoing obligation. In addition, he agreed to comply with all federal securities laws and regulations.

### G. Cohen's Scienter and Unreasonable Conduct

52. During all relevant periods, Cohen acted with scienter and with negligence.

53. As the investment adviser for his clients' accounts, he had access to and discretionary authority with respect to the accounts.

54. When misappropriating funds from Client A, Client B, and Client C for Beast Basketball, to repay Former Client, or from their life settlement investments, Cohen acted intentionally. Without his clients' knowledge, he knowingly took funds for his own benefit out of his clients' Investment Adviser Firm accounts or from invested funds that were paid to his associates from his clients' Investment Adviser Firm accounts.

55. Cohen was aware of the fiduciary duties that he owed his clients based on his agreement on June 5, 2015 to comply with the rules of Investment Adviser Firm and all federal securities laws and regulations. In addition, Cohen was an investment adviser representative with a Series 65 license and was aware of the fiduciary duties owed by investment advisers.

56. Cohen therefore acted with scienter when engaging in a scheme to defraud by misappropriating advisory client funds, in violation of his fiduciary duty.

57. Cohen also failed to exercise reasonable care. The standard of care of an investment adviser is that of a fiduciary. Cohen owed his advisory clients both a duty of loyalty and a duty of care. Cohen violated his fiduciary duty when misappropriating funds from Client A, Client B, and Client C, and he therefore acted at least negligently.

## FIRST CLAIM FOR RELIEF

### Fraud by an Investment Adviser

### Violations of Sections 206(1) of the Advisers Act

58. The SEC realleges and incorporates by reference paragraphs 1 through 57 above.

59. Cohen is an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11). In the relevant period, Cohen was in the business of providing investment advice concerning securities for compensation.

60. Client A, Client B, and Client C all had multiple accounts at Investment Adviser Firm. Cohen provided advisory services in connection with some of these accounts.

61. In the relevant period, Cohen, knowingly or recklessly, employed a device, scheme, or artifice to defraud his advisory clients.

62. Specifically, Cohen stole and misappropriated funds from three of his advisory clients for unauthorized purposes. First, he withdrew funds from Client A and Client B's Investment Adviser Firm brokerage accounts and diverted those funds into Beast Basketball for his benefit. Second, he withdrew funds from Client A's Investment Adviser Firm brokerage account and diverted those funds into Former Client's account without Client A's knowledge. Finally, he misappropriated funds that the Defrauded Clients had invested in the life settlements.

63. Cohen knew that he owed his clients a fiduciary duty based on his attestation on June 5, 2015 that he would comply with the rules of Investment Adviser Firm and all federal securities laws and regulations.

64. By engaging in the conduct described above, Cohen, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce, employed a device, scheme, or artifice to defraud his advisory clients.

65. By engaging in the conduct described above, Defendant Cohen violated, and unless restrained and enjoined, is reasonably likely to continue to violate, Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

## SECOND CLAIM FOR RELIEF

### Fraud by an Investment Adviser

### Violations of Sections 206(2) of the Advisers Act

66. The SEC realleges and incorporates by reference paragraphs 1 through 57 above.

67. Cohen is an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11). In the relevant period, Cohen was in the business of providing investment advice concerning securities for compensation.

68. Client A, Client B, and Client C all had multiple accounts at Investment Adviser Firm. Cohen provided advisory services in connection with some of these accounts.

69. In the relevant period, Cohen, at least negligently and in violation of applicable standards of care including the fiduciary duty as an investment adviser, engaged in transactions, practices, or courses of business that operated as a fraud or deceit upon his advisory clients.

70. Specifically, Cohen stole and misappropriated funds from three of his advisory clients for unauthorized purposes. First, he withdrew funds from Client A and Client B's Investment Adviser Firm brokerage accounts and diverted those funds into Beast Basketball for his benefit. Second, he withdrew funds from Client A's Investment Adviser Firm brokerage account and diverted those funds into Former Client's account without Client A's knowledge. Finally, he misappropriated funds that the Defrauded Clients had invested in the life settlements.

71. Cohen knew that he owed his clients a fiduciary duty based on his attestation on June 5, 2015 that he would comply with the rules of Investment Adviser Firm and all federal securities laws and regulations.

72. By engaging in the conduct described above, Cohen, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce, engaged in transactions, practices, or courses of business, which operated as a fraud or deceit upon his advisory clients.

73. By engaging in the conduct described above, Defendant Cohen violated, and unless restrained and enjoined, is reasonably likely to continue to violate, Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendant Cohen committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant Cohen and his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with him, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

### III.

Order Defendant Cohen to disgorge all funds received from his illegal conduct, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)].

### IV.

Order Defendant Cohen to pay civil penalties under Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VI.**

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  March 23, 2023                                  Respectfully submitted,


                                                        /s/ Stephen Kam
                                                        _____

                                                        Stephen Kam
                                                        Brent Wilner
                                                        Payam Danialypour
                                                        Manuel Vazquez
                                                        Securities and Exchange Commission
                                                        444 S. Flower Street, Suite 900
                                                        Los Angeles, California 90071
                                                        (323) 965-3998 (*telephone*)
                                                        (213) 443-1904 (*facsimile*)
                                                        kams@sec.gov
                                                        wilnerb@sec.gov
                                                        danialypourp@sec.gov
                                                        vazquezm@sec.gov

                                                        Attorneys for Plaintiff
                                                        Securities and Exchange Commission